## JAMES B. SUMNER *v.* WM. H. CRAWFORD.

A witness's testimony on cross-examination, that he did or did not make a certain statement as to a matter not material to the issue, cannot be contradicted, unless it has a bearing upon his feelings toward one of the parties.

Where perishable property was taken or attached by an officer on a writ, Nov. 28, 1859, and was afterwards duly examined under the statute, and advertised for sale on the 9th of December, and to be sold on the 13th of the same month,—*held* that the officer had kept the goods four days at least from the time of the attachment; the *taking* or *seizure* or *attachment* being reckoned from Nov. 28, and not from the date of the certificate of the examiners.

TROVER for two harnesses, two horses and the halters. It appeared that D. H. & J. B. Sumner & Co., having a just claim against one

Smith Barnett, brought a suit against him, and attached said property; that examiners were appointed at the request of plaintiffs, who made their certificate, and the officer proceeded to sell said property on the writ, at which sale this plaintiff was the purchaser of all said property, and took possession of the same; that while said property was in the possession of an agent of said plaintiff, one Burdette Barnett, a son of Smith Barnett, took said property away and put it into the hands of this defendant, who undertook to keep it for him, and when demanded by the plaintiff refused to deliver it to him.   Defendant claimed that the property belonged to Burdette Barnett at the time it was attached, and the question submitted to the jury was, whether the alleged sale of his property by Smith Barnett to his son Burdette a few days before it was attached was valid or void as to creditors.   The jury returned a verdict for the plaintiff, finding that the sale was void.   Smith Barnett, after he had stated the terms of the sale to his son, was asked on cross-examination, if this property at the time of the alleged sale did not constitute all the attachable property he owned; which he denied and said that he at the same time owned a double wagon, which he did not sell.   Plaintiff called a witness who stated that at the time in question he owned said wagon, and that said Smith Barnett never owned it.   To this evidence defendant objected, but the court admitted it, defendant excepting.   The court also ruled, that, upon the evidence in the officer's return of the sale of this property on the writ, the sale was legal, and the defendant excepted on the ground that the officer did not keep the property a sufficient length of time after the return of the examiners' certificate, before the sale.   It appeared from the officer's return, that he attached this property on the writ against Smith Barnett, Nov. 28th, 1859, and kept the same until the day of sale.   It did not appear on what day the plaintiffs in that suit made their request in writing to the officer to have examiners appointed, but it appeared that they were sworn, examined the property, and made their certificate on the 9th of December, 1859, in which they certified that all said property was liable to perish, waste and be greatly reduced in value by keeping.   The officer advertised the property on said 9th day of December, to be sold on the 13th of the same month, and the sale was adjourned from the 13th to the 20th of the same December, when the property was sold.

Defendant moves to set aside the verdict for the reasons above stated.

*Williams*, for plaintiff.

*Ramsay* and *Ray*, for defendant.

NESMITH, J.   As to the first exception made by defendant's counsel, it may be properly admitted, that, if the evidence tending to contradict Smith Barnett as to what he said on cross-examination about his title in the double wagon were material, it would then be proper to contradict it, otherwise the verdict should not be on this account disturbed.   *Seavy* v. *Dearborn*, 19 N. H. 355.

Such testimony will be immaterial, unless it has a bearing upon the witness's state of feeling towards one or both of the parties. Here it is not shown that the cross-examination of the witness had any relation to the state of feeling towards either party, so as to render it competent. It is of no importance, as bearing upon this issue, whether Smith Barnett owned the double wagon, as its title was not now in controversy between these parties, and no question is legitimately before the court on this point. For these reasons this exception is overruled. *Dewey* v. *Williams*, 43 N. H. 386.

The defendant says the plaintiff cannot maintain this action, because he proved no title to the property sued for. This question is made to depend upon the legality of the proceedings of the officer, who attached and sold the property. The sale was made on the writ, after the property had been duly examined, and found, under the certificate of the examiners, liable to perish.

The goods in question were attached Nov. 28, 1859. The date·of the certificate of the examiners was Dec. 9, 1859, and, on the same day, the officer advertised the property to be sold on Dec. 13, 1859. On this last day, the sale was postponed to Dec. 20, 1859,·at which time the property was sold at public auction, and the plaintiff bought it. The defendant alleges the defect to be, that the officer did not keep the property four days at least. When these *four* days commenced presents the material enquiry. Sections 19 and 22 of chap. 195 of the Comp. Laws, page 471, substantially authorize perishable property, when appraised in due form to be sold, *in the same manner as such sales are made on execution, unless a different mode is agreed on.* Section 3d of chap. 207, of Comp. Laws, provides that goods and chattels taken on execution shall be safely kept by the officer at the expense of the debtor four days at least, and shall be advertised for sale, &c., forty-eight hours before the expiration of said four days, and sold at public auction to the highest bidder. The word *taken* as used in this section, plainly signifies the same as the words *received, apprehended, seized, attached*—*Webster's Dict.* The first of the four days evidently refers to the day when the goods were *seized, attached, taken,* on execution, and not to a subsequent time when they were *examined, appraised,* or advertised and sold.

The object of the statute, in requiring that the goods should be kept four days from their *taking,* was to enable the debtor to redeem the goods by paying the debt, or otherwise satisfying the execution. The old law of 1791, sec. 4, which was in force up to the time of the revision of our statutes, and is practically in force now, provides that the goods *taken* to satisfy an execution shall be safely kept by the officer for the space of four days *next* after they are so *taken,* and, if within that time the owner shall not redeem the same by otherwise satisfying the execution, such goods and chattels shall be sold, &c. Here, then, the officer has obeyed the benevolent intent of the statute, by giving to the debtor much more than the four days from the time of the taking (Nov. 28th,) in which he was to redeem his goods by satisfying the debt against him, or by furnishing a receipter, or his bond under the

statute.　We cannot see that the defendant can properly complain that his principal had the lenity allowed by the officer, and we think this exception should also be overruled, and that there should be

*Judgment on the verdict.*